IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                           CRIM. ACTION NO.: 5:22CR12
                           (BAILEY)

STEPHANIE NICOLE SEYMOUR,

    Defendant.

FILED

AUG - 5 2022

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

## REPORT AND RECOMMENDATION

Currently pending before the undersigned, on referral from the District Court, is Defendant's Motion to Suppress, filed July 12, 2022. ECF No. 23. On July 18, 2022, the undersigned entered an Order Setting Oral Argument/Evidentiary Hearing and Setting a Briefing Schedule. ECF No. 24. Pursuant to this Order, Plaintiff filed a Response in Opposition on July 20, 2022. ECF No. 25. An Oral Argument/Evidentiary Hearing was held on July 27, 2022, at which time the parties presented evidence, proffers, and argument. After considering the same in conjunction with the parties' briefs, the undersigned would recommend that Defendant's Motion to Suppress be denied.

## I.
## FACTUAL/PROCEDURAL HISTORY

Defendant was indicted on April 5, 2022, on one count of Possession with Intent to Distribute 5 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). Defendant's indictment arises out of a traffic stop which was conducted on August 30, 2021, at approximately 3:00am in the area of Chapline Street and Route 2 in Wheeling,

WV. Officer Jacob Skinner of the Wheeling Police Department and the Ohio Valley Drug Task Force conducted the stop. Officer Skinner testified during the hearing, as did Sargent Jason Hupp, also of the Wheeling Police Department. Officer Skinner's body camera video was played during the hearing and admitted into evidence. A summary of the evidence is set forth below.

### A. Officer Jacob Skinner - Testimony

Officer Skinner first observed the subject vehicle (a dark colored Mazda) traveling southbound on Chapline Street and attempting to proceed onto Route 2 southbound in the downtown area of Wheeling. Officer Skinner observed that the brake lights and turn signals were not properly functional and effectuated a traffic stop for defective equipment.

After stopping the vehicle, Officer Skinner made contact with the driver, later identified as Robert Riggle, and asked for his license, proof of insurance, and registration for the vehicle. Defendant was the front seat passenger. Mr. Riggle and Defendant both stated that they did not possess physical identification. Notwithstanding, both provided their names and dates of birth to Officer Skinner.[1] Officer Skinner noticed that Mr. Riggle's hands were shaking rapidly, and he struggled to maintain eye contact with Officer Skinner.

While dispatch was conducting the identification check, Officer Skinner asked Mr. Riggle to step out of the vehicle. Mr. Riggle complied. When he did, an open knife fell out of his lap onto the ground. Mr. Riggle reached for the knife, but Officer Skinner directed him to refrain from doing so. Officer Skinner then asked Mr. Riggle if he possessed anything else sharp that could cut or injure Officer Skinner. Mr. Riggle advised that he was a drug addict and possessed a "rig,"

---

[1] Though it appears that Mr. Riggle initially tried to give an incorrect name, Mr. Riggle eventually provided a valid name to Officer Skinner.

2

which according to Officer Skinner is a street term for a needle used to inject intravenous drugs. Officer Skinner located the needle in Mr. Riggle's pocket and retrieved it.

During the traffic stop, Officer Skinner received a call over his radio from Sgt. Hupp, asking Officer Skinner to call Sgt. Hupp. Officer Skinner complied. On the call, Sgt. Hupp advised that he was processing a person who identified Defendant as the person from whom the detainee purchased methamphetamine.

Officer Skinner proceeded to the passenger side of the vehicle and requested that Defendant exit the vehicle. Officer Skinner advised that a search of the vehicle would be conducted based upon the needle in Mr. Riggle's possession. In response, Defendant was adamant that she did not want her possessions (her purse) or her person to be searched. She did not consent at any time to a search of her person or her possessions. Defendant wanted to remain in possession of her cell phone so that she could video the search. Officer Skinner did not permit Defendant to keep her cell phone when she exited the vehicle. Defendant also wanted a K9 on the scene. Officer Skinner requested that Sgt. Hupp come to the scene of the stop with his K9. Sgt. Hupp complied and arrived on scene a short time later.

Sgt. Hupp, who is Officer Skinner's supervisor, declined to deploy the K9 because probable cause to search already existed. Though he disagreed with this decision initially, Officer Skinner testified that he now believes this was the correct decision. Officer Skinner testified that he felt he had probable cause to search the vehicle and Defendant, and her possessions, because of the needle and the pipe he found on Mr. Riggle.[2]

As Officer Skinner began to search the vehicle, Defendant admitted that "dope" was located inside of the vehicle. Officer Skinner searched Defendant's purse, which was removed

---

[2] The pipe was only briefly mentioned during Officer Skinner's testimony.

3

from the vehicle and placed on the roof of the car. Inside of the purse, Officer Skinner located a box which contained a large amount of suspected methamphetamine. Also in the purse, Officer Skinner located a box of plastic bags, a digital scale, rubber bands, and a purple notebook that contained information related to the sale of methamphetamine. A separate bag which was located within the passenger compartment where Defendant had been sitting contained a folded amount of U.S. currency. In the center console of the vehicle, Officer Skinner located a small Ziploc bag containing methamphetamine. A digital scale was located on the driver's side of the vehicle.

Defendant was placed under arrest for felony possession of methamphetamine. Defendant was never formally charged in state court because of her willingness to cooperate with drug investigations and the drug task force. Once she was transported to the station, she was Mirandized and agreed to speak with police, which she did. The methamphetamine found in Defendant's purse amounted to 47 grams and was found to be 97 percent pure by the DEA lab.

**B. Sgt. Jason Hupp – Testimony**

Sergeant Hupp is employed with the Wheeling Police Department as a Patrol Supervisor. He is also in the K9 Unit. On August 30, 2021, Sgt. Hupp was in the booking room at Wheeling Police Headquarters when he heard the radio traffic from Officer Skinner's arrest. At that time, Sgt. Hupp was speaking with a person who had been arrested on a drug charge involving methamphetamine. The arrestee, John Shaw a/k/a "Pedro," provided a Mirandized statement to law enforcement in which he identified, Defendant, Stephanie Seymour as his supplier. Sgt. Hupp heard Officer Skinner's traffic stop involving Defendant and called Officer Skinner through the radio and asked that Officer Skinner call him on the phone. Sgt. Hupp spoke to Officer Skinner on the telephone and advised Officer Skinner that Defendant had been identified by someone under arrest as a person who supplied methamphetamine.

Officer Skinner requested that Sgt. Hupp proceed to the scene of Officer Skinner's traffic stop so that Sgt. Hupp could run his K9 around the subject vehicle. Sgt. Hupp went to the scene of the traffic stop at issue, but once there, he declined to run the K9 on the vehicle. Sgt. Hupp did not feel it was necessary to run the K9 because probable cause already existed by virtue of the needle that was found on Mr. Riggle's person.

### C. Officer Skinner's Body Camera Video[3]

Officer Skinner is seen approaching the vehicle in which Defendant was a passenger on the date of the traffic stop at issue. Officer Skinner makes contact with Mr. Riggle and advises that he stopped the vehicle because lights were not functioning properly. Officer Skinner then asks for Mr. Riggle's license, registration, and proof of insurance. Mr. Riggle advises that he does not have a driver's license on him. Mr. Riggle provides vehicular paperwork to Officer Skinner which lists the name "Nathan Nickelson." Mr. Riggle first claims that he is Nathan Nickelson, but Defendant corrects him and says that Nathan Nickelson is Mr. Riggle's brother. Mr. Riggle advises that the vehicle belongs to his brother.

Defendant says she does not have physical identification. Officer Skinner asks Mr. Riggle and Defendant for their names. Both provide full names (first, middle, and last) and dates of birth. Officer Skinner then asks Mr. Riggle to step out of the vehicle while dispatch confirms their identification. As Mr. Riggle steps out of the vehicle, a knife falls out of his lap. Mr. Riggle bends over to reach for the knife but is instructed to leave it on the ground. Mr. Riggle admits to being a drug user and advises that he might have a needle on his person. Mr. Riggle denies having anything else in the vehicle.

---

[3] The date and the time on the video are incorrect, as was noted during the hearing. The date reads 1/11/1970, and the time reads approximately 19:00 hours.

Officer Skinner provides Mr. Riggle's and Defendant's names and dates of birth to dispatch. He then turns his attention to Mr. Riggle and asks about the needle. Sgt. Hupp calls to Officer Skinner over the radio and asks Officer Skinner to call him. Officer Skinner retrieves the needle from Mr. Riggle's pocket. He then returns to his cruiser to call Sgt. Hupp. During the call, Sgt. Hupp advises Officer Skinner that Sgt. Hupp picked up an apparent drug user, and that the arrestee is getting his supply from Stephanie Seymour.

Officer Skinner approaches Defendant and asks if she has anything on her that he needs to know about. She denies having anything. She then tells Officer Skinner that he can search the car, but he cannot search her. Officer Skinner says he is going to run the K9 on the vehicle. Officer Skinner asks Sgt. Hupp to come to the scene and to bring his K9 with him. Officer Skinner tells Defendant to step outside of the vehicle and to leave everything inside of the vehicle. Defendant tries to take her cell phone with her, but Officer Skinner prevents her from taking the cell phone from the car.[4]

Sgt. Hupp arrives on scene. Defendant continues to argue with Officer Skinner as she exits the vehicle and while Officer Skinner confers with Sgt. Hupp. Sgt. Hupp advises Officer Skinner that probable cause exists to search the vehicle, and the K9 does not need to be deployed on the vehicle.

Officer Skinner begins to search the vehicle and the containers therein, including Defendant's purse. He finds "a lot of ice" in Defendant's purse. Defendant is then placed under arrest. As she is placed under arrest, she continues to argue with officers about the validity of the search. Officer Skinner also finds what he believes to be a ledger. Officer Skinner instructs other

---

[4] Defendant is insistent that she be able to take her cell phone with her when she steps out of the vehicle. Officer Skinner refuses this demand numerous times.

6

officers to place Defendant inside of his police cruiser. The search continues, and the video concludes with Officer Skinner preparing for Mr. Riggle and Defendant to be transported to the police station.

## II.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant does not contest the validity of the traffic stop, and Defendant concedes that she likely does not have standing to challenge the search of the vehicle. Defendant does challenge the validity of the search of Defendant's purse, however, and argues that the evidence from the search must be suppressed.

Based on the search, Defendant was placed under arrest and transported to the police station where she gave an inculpatory statement. Defendant argues that her statement must also be suppressed as it was the result of an unlawful search.

### B. Government's Arguments

The Government argues that Defendant lacks standing to challenge the search of the vehicle and its contents, including her purse. The Government further contends that probable cause existed to search the vehicle and the contents, including Defendant's purse. Finally, the Government argues that Defendant's inculpatory statement is not the fruit of the poisonous tree and therefore should not be suppressed.

## III.
## STANDARDS

The burden of proof for a Motion to Suppress is on the party seeking to suppress the evidence. *United States v. Gualtero*, 62 F.Supp.3d 479, 482 (E.D. Va. 2014) ("[t]he legal standards governing a motion to suppress are clear....[t]he burden of proof is on the party who seeks to suppress the

evidence") (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)). Once the defendant establishes a basis for his Motion, the burden shifts to the Government to prove by a preponderance of the evidence that the challenged evidence is admissible. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974) ("the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

With these standards in mind, the undersigned will turn to the substance of the arguments raised in Defendant's Motion to Suppress.

## IV.
## DISCUSSION

The issue before the Court is a narrow one: whether police officers lawfully searched Defendant's purse on the night at issue. After considering the evidence and argument submitted in this case, and after considering the case of *Wyoming v. Houghton*[5], which is particularly on point with the instant matter, the undersigned would conclude that officers' search of Defendant's purse was lawful.

In *Houghton*, Sandra Houghton was a passenger in a vehicle stopped in the early morning hours of July 23, 1995, by a Wyoming Highway Patrol Officer for speeding and for driving with a faulty brake light. *Houghton*, 526 U.S. at 297-98. Three people were in the front seat of the car at the time of the stop: David Young, who was the driver, his girlfriend, and Sandra Houghton. While questioning Mr. Young, the officer noticed a hypodermic syringe in Mr. Young's shirt pocket. Mr. Young was instructed to get out of the vehicle and place the syringe on the hood of the car. The officer asked Mr. Young why he had a syringe. Mr. Young admitted that he used it to take drugs. *Id.* at 298.

---

[5] 526 U.S. 295 (1999).

Other officers at the scene ordered the two female passengers out of the car and asked them for identification. Because of Mr. Young's admission, the passenger compartment of the car was searched. On the back seat, a purse was located. Ms. Houghton claimed ownership of the purse. The officer searched the purse, which contained drug paraphernalia, a syringe with 60 ccs of methamphetamine, and another syringe with 10 ccs of methamphetamine. Ms. Houghton was placed under arrest and charged with felony possession of methamphetamine. *Id.* at 298.

Prior to trial, Ms. Houghton filed a motion to suppress evidence. The court denied the motion, holding that the officer had probable cause to search the car for contraband, and by extension, any containers therein that could hold such contraband. A jury convicted Ms. Houghton of the charge. *Id.* at 299. The Wyoming Supreme Court reversed, holding that the search violated the Fourth and Fourteenth Amendments because the officer "knew or should have known that the purse did not belong to the driver, but to one of the passengers," and because "there was no probable cause to search the passengers' personal effects and no reason to believe that contraband had been placed within the purse." *Id.* The United States Supreme Court reversed, holding that "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 306. In the instant case, probable cause existed to search the vehicle, including Defendant's purse, because the purse, like the one in *Houghton*, could conceal the object of the search, i.e., drugs.

"A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotations omitted). "The test for probable cause is not reducible to precise definition or quantification." *Id.* Rather, "[i]n

9

evaluating whether the State has met this practical and common-sensical standard, [courts] have consistently looked to the totality of the circumstances." *Id.* at 244.

Here, the totality of the circumstances demonstrates that officers had probable cause to search the vehicle at issue. When Officer Skinner made contact with Mr. Riggle after stopping the vehicle, Mr. Riggle appeared nervous and had difficulty maintaining eye contact with Officer Skinner. Mr. Riggle was driving a vehicle that he did not own. When he provided the insurance information to Officer Skinner, Mr. Riggle initially claimed to be the person listed on the proof of insurance - Nathan Nickelson. A knife, a needle (which Mr. Riggle admitted was used for injecting drugs), and a pipe (another piece of drug paraphernalia) were found on Mr. Riggle's person. Based upon these circumstances, it was reasonable for officers to conclude that evidence of criminal activity and/or contraband (i.e. drugs) could be located inside of the vehicle. Because probable cause existed to search of the subject vehicle, probable cause existed to search the containers in the vehicle, including Defendant's purse. *See Wyoming,* 526 U.S. at 306.

Defendant argues that Defendant's purse was not just another container within the vehicle. Rather, the purse was Defendant's personal belonging and was situated on her lap during the stop. The implication of this argument is that Defendant's purse, by its very nature, is more personal than a simple container, and should have been treated by officers with a heightened sense of privacy, possibly more akin to that which was a part of Defendant's person. This argument is not persuasive. As the Supreme Court explained in *Houghton*, "[a] passenger's personal belongings, just like the driver's belongings, are containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car." *Wyoming,* 526 U.S. at 302 (emphasis and quotations in original). Additionally, the *Houghton* Court considered the degree of intrusiveness upon personal privacy of a search of a passenger's purse by drawing a

distinction between that search and the search of someone's person. The Court impliedly rejected an equivocation between the two searches and found that, while "a limited search of the outer clothing…constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience….such traumatic consequences are not to be expected when the police examine an item of personal property found in a car." *Houghton*, 526 U.S. at 303 (internal citations and quotations omitted).

The undersigned acknowledges that the purse in *Houghton* was found on the rear seat of the vehicle, whereas here, Defendant's purse was on her lap at the time of the stop, which is a point of emphasis in Defendant's argument. This difference is of no moment, however. The Court in *Houghton* did not base its decision regarding the searchability of Ms. Houghton's purse upon its location inside of the vehicle, but rather, on the likelihood of finding contraband within Ms. Houghton's purse. Because there was probable cause to search the *Houghton* vehicle, probable cause existed to search Ms. Houghton's purse. Such was the case here, as well.

Moreover, the fact that the purse was on Defendant's lap at the time of the traffic stop does not support Defendant's position. Rather, the location of Defendant's purse on her lap makes the likelihood of finding contraband therein higher than if the purse had been located elsewhere, like the backseat, because Defendant had greater and more immediate access to it.

Officers had probable cause to search the vehicle. Thus, officers had probable cause to search Defendant's purse. The search of Defendant's purse was therefore a lawful one, and the evidence obtained therefrom should not be suppressed. Because the search of the vehicle and Defendant's purse were lawful, Defendant was lawfully placed under arrest. As a result, her inculpatory statements after being advised of her *Miranda* rights are not the fruit of the poisonous tree and should not be suppressed.

## V.
## CONCLUSION

Therefore, the undersigned would conclude that Defendant has not met her burden of proving that the evidence in question should be suppressed. The Government has established by a preponderance of the evidence that the evidence in question is admissible. Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's **Motion [23] to Suppress be DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated: 8-5-22

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE